IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* JOSÉ R. VALDEZ,<br><br>PLAINTIFF,<br><br>v.<br><br>AVETA, INC.; MMM HEALTHCARE, INC.; PMC MEDICARE CHOICE, INC.; MSO OF PUERTO RICO, INC.; MMM HOLDINGS, INC.; AND RICHARD SHINTO, DEFENDANTS. | CIVIL NO.  15-cv-01140-CCC |

UNITED STATES' STATEMENT OF INTEREST AS TO
DEFENDANTS' MOTION FOR ORDER TO RETURN MISAPPROPRIATED DOCUMENTS

TO THE HONORABLE COURT:

COMES NOW, the United States of America, through the undersigned attorneys, and as a special appearance without submitting to the jurisdiction of this Honorable Court, respectfully submits the following Statement of Interest pursuant to 28 U.S.C. § 517, to respond to certain arguments Aveta, Inc., MMM Healthcare, Inc., PMC Medicare Choice, Inc., MSO of Puerto Rico, Inc., MMM Holdings, Inc., and Richard Shinto ("Defendants") made in their Reply in Support of Motion for Order to Return Misappropriated Documents (Dkt. No. 133).  Although the United States has not intervened in this case and is not a formal party, it remains the real party in interest.  *United States ex rel. Eisenstein v. City of New York*, 556 U.S. 928, 930 (2009). Further, because the False Claims Act, 31 U.S.C. § 3729-3733 ("FCA"), is the primary tool used to redress fraud on the federal government, the United States has a substantial interest in the

development of the law in this area and in the correct application of that law in this, and similar,

cases.

## BACKGROUND

The FCA imposes civil liability on any person who, among other things, "knowingly

presents, or causes to be presented, to . . . the United States . . . a false or fraudulent claim for

payment or approval."  31 U.S.C. § 3729(a).  The FCA permits private citizens, known as

"relators," to bring a *qui tam* action on behalf of the United States for alleged violations of the

statute.  31 U.S.C. § 3730 (b)(1).  Relators must file their *qui tam* complaints under seal and

serve the United States with the complaint, along with a written disclosure of "substantially all

material evidence and information the person possesses" to support the allegations.  31 U.S.C.

§ 3730(b)(2).  The Attorney General then has an opportunity to investigate the allegations and

determine whether to intervene and take over the suit.  31 U.S.C. §§ 3730(b)(2) & (3). If the

Attorney General declines to take over the *qui tam* litigation, the relator "shall have the right to

conduct the action."  31 U.S.C. § 3730(b)(4)(B).  If the *qui tam* suit is successful, the relator is

entitled to receive a percentage share of that recovery.  31 U.S.C. § 3730(b), (d).  Even if the

United States declines to intervene, it remains the real party in interest.  *Eisenstein*, 556 U.S. at

930.  Indeed, the United States may later intervene if good cause exists.  31 U.S.C. § 3730(c)(3).

In this case, relator Jose Valdez filed a *qui tam* complaint under seal in April 2011

alleging that Defendants improperly submitted unsupported diagnosis data and failed to correct

unsupported diagnosis codes in order to inflate risk adjustment payments from the Centers for

Medicare and Medicaid Services.  The United States investigated relator's allegations and

notified the Court in January 2014 that it declined to intervene in this matter at that time.  The

case was unsealed, and relator began pursuing the matter himself under 31 U.S.C.

§ 3730(b)(4)(B).  Defendants now seek an order barring relator from using certain documents and information in this litigation that they claim were obtained in a manner contrary to relator's employment agreement.  Specifically, defendants seek an order (1) compelling relator to return any documents that relator retained following the termination of his employment, (2) compelling relator to list every individual and entity to whom he disclosed such documents, (3) striking allegations based on such documents from the First Amended Complaint; and (4) requiring relator to pay defendants' fees and expenses.  (Dkt. No. 133 and Dkt. No 123).

### RELATOR IS ENTITLED BY LAW TO SHARE NON-PRIVILEGED DOCUMENTS WITH THE UNITED STATES IN PURSUIT OF HIS FCA CASE

It is a well-established principle of contract law that a promise is unenforceable if, under the circumstances, the interest in its enforcement is outweighed by a public policy that would be undermined by its enforcement.  Restatement (Second) of Contracts Section 178 (1982); *Town of Newton v. Rumery*, 480 U.S. 386, 392 (1987) ("[A] promise is unenforceable if the interest in its enforcement is outweighed in the circumstances by a public policy harmed by enforcement of the agreement.").  Courts have consistently recognized the important public interest in private citizens disclosing information about possible violations of the law to the government.  *See Fomby-Denson v. Dept. of the Army*, 247 F.3d 1366, 1377 (Fed. Cir. 2001) ("[T]he public policy interest at stake the reporting of possible crimes to the authorities is one of the highest order and is indisputably 'well defined and dominant' in the jurisprudence of contract law.").  Thus, private agreements that would thwart the clear public interest in the detection and exposure of potential fraud against the government are not enforceable for reasons of public policy.  *Saini v Int'l Game Tech.*, 434 F. Supp. 2d 913, 923 (D. Nev. 2007) (explaining that a confidentiality agreement is not enforceable "if the employee is disclosing an illegal or wrongful act for a purely public

3

purpose, such as whistleblowing"); *EEOC v. Astra U.S.A., Inc.*, 94 F3d 738, 744-745 (1st Cir.

1996) (refusing to enforce settlement agreements prohibiting employees from assisting EEOC

investigations); *Connecticut Light & Power Co. v. Sec'y of the U.S. Dept. of Labor*, 85 F.3d 89,

95 (2d Cir. 1996) (invalidating settlement agreement restricting former employees' ability to

cooperate with administrative and judicial bodies investigating safety violations); *Lachman v.

Sperry-Sun Well Surveying Co.*, 457 F.2d 850, 853-54 (10th Cir. 1972) (explaining that

enforcement of a non-disclosure agreement would force an employee to choose "between

breaching the contract and hoping an actual crime is eventually proven, or honoring the contract

while a possible crime goes unnoticed").

     In this case, the relators are pursuing claims under the FCA, which articulates a clear

public interest in the detection and exposure of potential fraud against the United States.  Indeed,

the FCA was designed to protect and encourage the disclosure to the United States of false of

fraudulent claims by persons with knowledge of fraud.  The purpose of the *qui tam* provisions is

"to encourage those with knowledge of fraud to come forward."  *Neal v. Honeywell*, 826 F. Supp

266 (N.D. Ill. 1993) *aff'd*, 33 F.3d 860 (7th Cir. 1994) (citing H.R. Rep. No. 660, 99th Cong., 2d

Sess. 22 (1986)).  In fact, in order to proceed with an FCA action, a relator must disclose to the

United States "substantially all material evidence and information the person possesses."  31

U.S.C. S. 3730(b)(2).  Thus, by definition, relators possess and are willing to disclose to the

government inside evidence of fraud – whether in the form of documents or other information –

that their employers, co-conspirators, or other potential FCA defendants would rather keep

concealed.

     In the context of *qui tam* actions brought by relators under the FCA, courts have

repeatedly held that the public interest in disclosure of potential wrongdoing outweighs any

4

interest in enforcing private confidentiality agreements between relators and their employers. For example, in *United States ex rel. Green v. Northrop Corp.*, 59 F.3d 953 (9th Cir. 1995), the defendant sought to enforce a private settlement agreement with the relator in which relator released all claims against the defendant.  The court refused to honor the release because enforcement "would impair a substantial public interest," nullifying the incentives Congress intended to create under the FCA, including encouraging additional private *qui tam* suits to increase enforcement and deterrence of fraud.  *Id.* at 963, 966.  Likewise, in *United States ex rel. Grandeau v. Cancer Treatment Ctrs of Am.*, 350 F.Supp.2d 765 (N.D. Ill. 2004), the relator provided the government with copies of confidential documents that supported his *qui tam* claims.  *Id.* at 773.  The court found that the relator's disclosure to the United States in the *qui tam* action was permissible and did not breach the relator's confidentiality agreement with his employer.  *Id.*  In *Shmushkovich v. Home Bound Healthcare, Inc.*, No. 12 C 2924, 2015 WL 3896947 (N.D. Ill. June 23, 2015), the court reached a similar holding, noting its broad discovery discretion, the wide range of activity protected by the FCA and the public policy favoring facilitation of FCA claims: "[C]ourts recognize that the public policy interest underlying the FCA support relators' potential need to take possession of evidence in a manner that might otherwise violate common discovery practice, and that confidential information will often be the only means by which an FCA plaintiff can prove a qui tam action."  *Id.* at *3.  *See also X Corp. v. John Doe*, 805 F. Supp. 1298, 1310 n.24 (E.D.Va. 1992) (holding that confidentiality agreements that purport to prevent an individual from disclosing evidence of fraud to the government are void as against public policy and did not prevent defendant's attorney from pursuing *qui tam* action).

Defendants rely on *United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.* 637 F.3d 1047, 1062 (9th Cir. 2011) in support of their argument that relator should be precluded from keeping Defendants' documents after his employment terminated.  However, in *Cafasso*, the employee purloined vast amounts of data in an indiscriminate manner, copying tens of thousands of pages of documents – nearly eleven gigabytes of data -- including trade secrets, internal proprietary research, sensitive government information and a patent application that the Patent Office had placed under a secrecy order.  The *Cafasso* court deferred considering a claim of public interest, but allowed that a public policy exception may exist where removal of documents is reasonably necessary to pursue an FCA claim.  *Id*.  In this case, *Cafasso* is inapplicable because there is no evidence that relator indiscriminately removed documents that were unrelated to his fraud claims.

Consistent with both long-standing public policy and Congress' clear intent in enacting the FCA, relators are entitled to share non-privileged documents in pursuit of his FCA case with the United States.  To the extent that any private confidentiality agreement between Defendants and relator might be construed to prevent Relator from disclosing evidence of potential fraud to the United States, it cannot be enforced as a matter of public policy.

## CONCLUSION

WHEREFORE, The United States respectfully requests that the Court consider the foregoing points and authorities when ruling on defendant's Motion For Order to Return Misappropriated Documents.

RESPECTFULLY SUBMITTED

In Washington, DC, for San Juan, Puerto Rico, this 30th day of September, 2016.

**BENJAMIN C. MIZER**
ACTING ASSISTANT ATTORNEY GENERAL


*/s/ Olga Yevtukhova*
_____
MICHAEL D. GRANSTON
DANIEL R. ANDERSON
OLGA YEVTUKHOVA
Attorneys, Civil Division
Commercial Litigation Branch
U.S. Department of Justice
Post Office Box 261
Ben Franklin Station
Washington. D.C. 20004
Telephone: (202) 307-1026
Facsimile: (202) 305-7797
Email: olga.yevtukhova@usdoj.gov

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on this date I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of this filing to all attorneys of record.

*/s/ Olga Yevtukhova*

Olga Yevtukhova
Trial Attorney